Good morning, Your Honor. Carolyn Phillips appearing on behalf of the appellant Marceline Hughes. Mr. Hughes is before this Court today asking you to overturn his conviction for Golden One Credit Union bank robbery and also to send back his case for resentencing pursuant to Booker Fan Fan. The briefs actually set forth the basis of our request. In terms of the Golden One Credit Union bank robbery, it's our position that the evidence is insufficient to uphold the conviction in two respects. The eyewitness identification was never challenged by the defense, and most of the evidence, in fact all of the evidence placed Mr. Hughes before the bank robbery. The bank robbery in a vehicle and post after the bank robbery there were bait bills found in his possession, but no one, including the eyewitness that said that he saw the bank robber actually enter the bank, could identify Mr. Hughes as the perpetrator. The second part... The robbers were wearing ski masks, correct? Yes. So it's not as though there were people who were not wearing masks who did not look like Mr. Hughes, they just couldn't identify whoever it was behind the ski masks. Well, part of it is that there was one eyewitness who saw a bank robber before he put on his ski mask and said that he would be able to identify the person he believed if he saw him again and could not do that, could not identify Mr. Hughes as that person. But the evidence never places Mr. Hughes actually in the bank holding the weapon that he's been convicted of. And that weapon is part of the second issue actually has to do with the consecutive sentence that he received for 10 years at the time of sentencing as a semi-automatic assault weapon. And in addition to that, other than the insufficiency of the evidence and also a challenge to the enhancement, the 10-year enhancement, Mr. Hughes is asking that he be sent back to have his case re-evaluated for sentencing at the time that he was sentenced. The Booker-Fan-Fan decision hadn't come down from the United States Supreme Court. At sentencing, the court was provided information from the defense regarding his childhood, his upbringing, situations and facts that would go to the question of 355-3, which the Booker-Fan-Fan said should be factors that would be evaluated at the court prior to sentencing and taken into consideration at the time of sentencing. It's unclear at the time that Mr. Hughes was sentenced whether or not the court felt that the – I'm sure the court followed those sentencing guidelines as if they were mandatory because at the time they were at the time of his sentencing. So we're asking the court to send this matter back. But with respect to the semi-automatic weapon, what do you do with our recent decision in Dare? I'm sorry, I didn't hear that. What do we do with our recent decision in the Dare case? Remind me what that is. Oh, it's a case where we held two to one that Harris is still good law even after Booker-Fan-Fan. Now Judge Levy, L-E-A-V-Y, writing for the two-judge majority, says we have difficulty reconciling Harris with Booker-Fan-Fan, but it's not up to us to overrule it. Judge Baez said, listen, it's inconsistent and it's finished. Right. But he was in dissent. Well, I agree with the dissent. Yeah, no surprise. I think how – in terms of the argument that I made to this court in my reply brief, it focuses on the fact that obviously the Harris decision was a plurality decision. Justice Breyer was the one that said I can't really follow Apprendi. I'm not a wholehearted follower of the Apprendi rule regarding presenting the facts to a jury, including the facts of the semi-automatic assault weapon that we have here in this case. But then we have Booker where Breyer seems to have embraced the Apprendi holding. Well, seems to is a problem for us. Assuming Harris applies, what does that do to your argument? I'm sorry. Assuming that Harris applies, what does that do to your argument? You're arguing that we shouldn't apply Harris and that our case law is wrong. Right. But if we apply Harris, what does that do? Well, if we apply Harris, then I'm still of the opinion that the court did not have any evidence before it that this weapon, nor was the weapon identified at any time during the trial as a semi-automatic assault weapon, and there was no evidence presented at sentencing that this was a semi-automatic assault weapon that would fall within the purview of 921. There simply wasn't any evidence regarding that issue. There was a lot of descriptions about the weapon, but there was nothing that identified that weapon by any of the witnesses during the trial. What we have is the probation officer saying, I'm going to deem this weapon as a semi-automatic assault weapon that falls within 921, and on that basis made the recommendation for a 10-year enhancement, or I should say consecutive sentence. What do we do with the appeal waiver? What do we do with the appeal waiver? The appeal waiver, well, what we have is two situations here. One is a conviction by a jury as to the Golden One credit union bank robbery, and then we have a plea agreement regarding the Bank of the West. Right. The Bank of the West, there hasn't been an argument made to undermine that conviction. What we've asked this court to do is send it back in terms of sentencing again for Booker. I believe that it does. We have a case that says that an appeal waiver, if it includes sentencing issues, is valid as to any Booker issues as well, even if those issues were not evident at the time of trial. Does that affect the analysis here? No, obviously. I think part of the issue would be, and we haven't raised that here, is whether or not the plea agreement was entered into in some kind of duress. It would undermine the basis of that plea agreement. So I think we have, I think what we're asking this court to do is to look beyond the plea agreement, look at the fact that the law has changed since he was actually sentenced, since he entered into that plea agreement, and look to see whether or not, I mean, I think the court could say that had Booker been decided at the time or prior to him entering into the plea agreement, that may have factored into the nature of the plea agreement and maybe some of the considerations that might have been taken into account. Did I understand you to say that you're claiming that he entered into the plea agreement under duress? No, I said we haven't made that. We did not raise that. But I'm asking the court to look beyond those types of exceptions and look to the fact that Booker actually changed the way in which defendants enter into plea agreements, how they're negotiated in terms of sentencing. Is this an argument that it was not a knowing and voluntary entry into the plea agreement because he didn't understand that the landscape would be changed by Booker Fanfan? I think we can infer that, sure. What we have is an individual that goes in. Remind me of the length of the various sentences. How long was the sentence for Count 1? That's the Bank of the West sentence to which he pled. I believe his total sentence was 255 months, and for Counts 1 and Counts 3, I think it was 135 months. Okay, 135 was for the bank robberies, and then there was a 10-year consecutive sentence. And were the two bank robberies sentenced concurrently or consecutively? Concurrently. That is to say, if the sentence for Count 3 lasts, it doesn't matter, or does it? Does it say Count 1 and Count 3? One is armed bank robbery of Bank of the West. Three is armed bank robbery for Golden 1. Right. Since they're concurrent, does it matter? Well, it's going to matter in the sense that if, in fact, there's insufficient evidence to uphold the Golden 1 credit union bank robbery, which is Count 3, I believe. Yeah, that's correct. You've got your number. Right. Then the issue of the semi-automatic assault weapon is eliminated, and we get rid of the 10-year consecutive sentence. So, yes, it does impact it, plus the fact that you add on certain points in terms of the offense level and reaching the offense level points because there are two bank robberies. Okay. I've got another question, which is assume for a moment that the court with this case and with Harris and with our case in Dare remain as they are for now. Assume that we're going to follow Harris and Dare. Should we withdraw submission for a time to see what happens to Dare, to see what happens to Harris? The reason I ask that question is so long as your case remains live on direct appeal, your Booker Fanfan issue remains live. When it goes final, you're stuck with habeas, and Booker Fanfan is not available on habeas. Therefore, do you have an objection if we were to withdraw submission until we find out what happens? Of course not. I think it would be the benefit of Mr. Hughes to do so. Okay. That's kind of what I thought. Okay. Thank you, Counsel. Thank you. May it please the Court. My name is Deuce Rice. I'm an assistant U.S. attorney from the Eastern District, California, and I was the trial prosecutor in this case. With respect to one thing that was said in the, with all due respect to Ms. Phillips, Judge Ishii had before him, when he was finding that it was a semi-automatic assault weapon, the actual weapon and the photographs of the weapon itself, and those exhibits are set forth in the supplemental excerpts for record. One, Governments Exhibit 2B and 2E, and also 8 and 9, which show that actual weapon itself. It shows that it was a pistol, a semi-automatic pistol. It had a 30-round magazine detachable outside the pistol grip, as well as a shroud that allowed it to be held without the hand being burned. What's the evidence, though, that links that to the defendant? The picture of him holding it during the bank robbery? The picture of the masked man holding it? Yes. The masked man. I mean, that's not the, you can't say that's the defendant, can you? I mean. Well, I believe I can, because. . . Let me ask the question another way. Why do you say, that's my question, really, is why do you say that's the defendant holding the semi-automatic weapon? Because the very next morning, it was found under the seat of his car, and the detective testified during the trial, he had compared the photographs from the bank robbery to that weapon, and they match. In addition, we know he was in the bank robbery, because four minutes prior to the bank robbery, the golden one occurring, he's driving the stolen getaway vehicle, trying to go out through. . . They're making a sweep through the parking lot, see if there's any cop cars or how busy the bank is. Another driver's coming in. They get into a confrontation, because she's trying to get out of traffic, to get in through the proper entrance, as he's trying to go out. The next day, or two days after the bank robbery, she picks him out of the photo lineup, based on that confrontation that they had face-to-face. He's not wearing his ski mask at the time that he's trying to go out. That same afternoon of the bank robbery, he goes and purchases a car, and two of the bait bills were recovered from the people that he purchased the car from. That's the same day as the bank robbery. The very next day, he has $660 in cash in his pocket. One of the bait bills from the bank robbery is also there. There was $5,000 taken in that golden one credit union robbery. He has $660 in his pocket. He spent $400 for the car. That's $1,600. And he gave his girlfriend $1,500, and she testified to that as well. $2,560, basically half the money from the bank robbery. There were only two people in that stolen getaway vehicle when it was there at the bank, four minutes prior to the robbery occurring. I think it's pretty safe to assume, and based on the descriptions, the physical descriptions of the robber, that that was Marcelone Hughes that had it, and he has the weapon. In addition, the gun case for that particular semi-automatic assault weapon is found in his apartment on the 27th, the next day after the robbery, when we did the search warrant late in the evening. Well, there was a gun case found, but did someone testify that that was the gun case for this semi-automatic weapon? Yes, that it matched. It was a gun case that fit the semi-automatic weapon. Basically, with respect, the circumstantial evidence in this case was, in my view, in the government's view, very overwhelming on the golden one credit union robbery. The defense did not really focus on that eyewitness ID on the golden one credit union robbery because they were more focused on the eyewitness IDs in the Bank of the West, where they thought they had a better shot at trying to walk that. The reason that was important is because there were two 924C counts here. That second 924C count would have carried a consecutive 25 years. The defendant did pretty well here in the government's view. In fact, the offer prior to the trial was, plead to the two bank robberies, one 924C count, and that's precisely what he wound up with when the jury hung 10-2 for conviction on the Bank of the West robbery. With respect to the Court's comments on Darin Harris, I agree. The government agrees that at the present state of the law that he's stuck with that. Judge Ishii did give him the low end of the applicable guideline range on both bank robberies, sentencing concurrent. The likelihood that a different sentence will result on remand is extremely unlikely. What is your view of the appeal waiver? My view of the appeal waiver is it applies to the Bank of the West robbery and it also applies to a sentence on that count. So how does that parse that out for me? What aspects of the sentence does it affect and what aspects of the sentence does it not affect? The only aspect of the sentence that it might affect would be if this Court were to overturn the Golden 1 credit union robbery, then he wouldn't receive the two levels for grouping. But that would be the only effect on it. Whether the Court would, what the Court would do with that, I do not know when it came back, as far as relevant conduct and things like that. And what would your response be to my question that I asked at the end to opposing counsel, and that is taking this under submission while we find out what happens to Harris and Dare? I think that would be wise. Okay. That would be my opinion. If I was in your shoes, that's probably what I would do. Okay. Thank you, counsel. The case just heard will be submitted.
judges: Thomas, W. Fletcher, Mahan